IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 3:19-CV-107 (CAR) |
| | : | |
| MARK A. ELLIS, M.D.; PATSY | : | |
| ALLEN; MARK A. ELLIS, M.D. d/b/a | : | |
| ELLIS PAIN CENTER; and ELLIS | : | |
| PRACTICE MANAGEMENT, LLC; | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## ORDER ON DEFENDANTS' MOTION TO DISMISS

The United States of America filed this action asserting Defendants Mark A. Ellis,

M.D. ("Ellis"); Patsy Allen ("Allen"); Mark A. Ellis, M.D. d/b/a Ellis Pain Center ("EPC");

and Ellis Practice Management, LLC ("EPM") violated the False Claims Act ("FCA"), 31

U.S.C. § 3729 *et al.*, for alleged presenting false claims to the Medicare program. The United

States also asserts claims for unjust enrichment and payment by mistake. Currently before

the Court is Defendants' Motion to Dismiss the Complaint for failure to state a claim upon

which relief may be granted. Having considered the Motion, pleadings, and applicable

law, the Court **DENIES** Defendants' Motion [Doc. 6].

## BACKGROUND

For purposes of this Motion, the Court accepts all factual allegations in the

Complaint as true and construes them in the light most favorable to the United States.

On November 27, 2019, the United States brought this *qui tam* action against Defendants Ellis, Allen, EPC, and EPM, alleging violations under the FCA for presenting false claims to Medicare and under common law for unjust enrichment and payment by mistake. The Government alleges that Defendants submitted thousands of false claims to Medicare for services that were never rendered or not medically reasonable or necessary, and such actions unjustly enriched their bank accounts at the expense of the United States and the public.[1]

At all times relevant to the Complaint, Defendant Ellis was a licensed physician engaged in the practice of pain management, the sole owner of Ellis Pain Center ("EPC"), and one of the owners of Defendant EPM.[2] Defendant Allen was the Practice Administrator of EPC and has no medical training or certifications.[3] Defendant EPM operated EPC.[4] Approximately 50% of the patients seen at EPC are Medicare beneficiaries.[5] Ellis and Allen directed employees of EPC to conduct tests on Medicare beneficiaries and to submit claims to Medicare.[6]

A.  Legal and Regulatory Framework

The FCA provides for the award of treble damages and civil penalties for knowingly

---

[1] Compl. ¶ 1 [Doc 1].

[2] *Id.* at ¶ 16.

[3] *Id.* at ¶ 17.

[4] *Id.* at ¶ 18.

[5] *Id.*

[6] *Id.*

presenting or causing to be presented false or fraudulent claims for payment to the United States, for knowingly making or using, or causing to be made or used, false records or statements material to false or fraudulent claims paid by the United States and for knowingly and improperly avoiding an obligation.[7]

In 1965, Congress enacted the Health Insurance for the Aged and Disabled Act, 42 U.S.C. § 1395 et seq., known as the Medicare Program, as part of Title XVIII of the Social Security Act, to provide health insurance coverage for people age 65 or older and for people with certain disabilities or afflictions.[8] The Medicare Program is administered by the United States Department of Health and Human Services, through the Center for Medicare and Medicaid Services ("CMS"). The Medicare Program consists of four parts.[9] Medicare Part B is a federally subsidized, voluntary health insurance program that pays a portion of the costs of certain health services, including the costs of clinic visits to healthcare providers, physicians' services, services and supplies incident to physicians' services, and diagnostic tests.[10]

Health care providers that wish to submit claims for Medicare reimbursement must enroll in the Medicare Program.[11] Once the provider is enrolled or credentialed, the

---

[7] *Id*. at ¶ 23 (citing 31 U.S.C. § 3729(a)(1)).

[8] *Id*. at ¶27 (citing 42 U.S.C. §§ 426, 426a).

[9] *Id*. at ¶ 30 (citing 42 U.S.C. §§ 1395c-1395j).

[10] *Id*. (citing 42 U.S.C. § 1395k).

[11] *Id*. at ¶ 36.

provider may submit claims to Medicare for services rendered to the patients. To obtain reimbursement from Medicare for certain outpatient items or services, providers and suppliers submit a claim form known as the CMS-1500 form ("CMS-1500") or submit claims electronically using the 837P format ("837P").[12]

Reimbursement for Medicare Part B claims is made through CMS, which contracts with Medicare Administrative Contractors ("MACs") (previously private insurance carriers) to administer and pay Part B claims submitted by health care providers from the Medicare Trust Fund.[13] At all times relevant to this Complaint, Cahaba Government Benefit Administrators, LLC ("Cahaba") was the MAC that administered Medicare Part B claims submitted by Defendants.[14]

B.  Factual Allegations

Defendants Ellis and EPC were enrolled as suppliers of healthcare services to Medicare beneficiaries.[15] The Complaint alleges that although Ellis and EPC "knew, recklessly disregarded or were deliberately ignorant of the conditions for reimbursement of medical under the Medicare Program," they nonetheless "implement[ed] a scheme by which they submitted claims to Medicare for urine drug testing and ancillary testing that

---

[12] *Id.* at ¶ 39.
[13] *Id.* at ¶ 32.
[14] *Id.* at ¶ 33.
[15] *Id.* at ¶ 46.

was never rendered and/or was medically unnecessary."[16] The 67-page Complaint divides the alleged false claims into two broad sections—urine drug testing and ancillary testing—with each section containing detailed allegations, including specific patient encounters, that highlight the alleged fraudulent practices.

In the urine drug testing section, the Government details EPC's urine drug testing equipment, EPC's use of billing "shortcuts" into its billing software that it submitted to Medicare, and EPC's billings for urine tests on patients that it never conducted. Specifically, the Government alleges that Ellis and Allen directed its third-party billing company to create a series of "shortcuts" in the billing software that it used to submit EPC's claims to Medicare.[17] Ellis and Allen would tell its billing company which drug tests it wanted to include in the shortcut, the company would create the shortcut, and when an EPC employee entered the name of the shortcut into the billing software, the software automatically populated the claim form with codes for the pre-determined tests selected by Ellis and Allen, even though there was no indication on the bill that the tests had been conducted.[18] EPC would use the shortcut to automatically add additional tests it never conducted to the claim that it submitted to Medicare; Medicare reimbursed EPC for all of those tests, but had it known such tests were never conducted, it would not have

---

[16] *Id.* at ¶¶ 48-49.

[17] *Id.* at ¶ 89.

[18] *Id.* at ¶¶ 90-93.

reimbursed EPC.[19] The shortcuts did not vary by patient or reflect the individual patients'
respective needs.[20]

Although Ellis and Allen knew that Medicare required drug screening tests to be
conducted separately from the drug confirmation test, they nonetheless directed that the
shortcut "USDM" automatically bill Medicare for both a drug screening test and a
confirmation test, even though EPC only ran a single test on the patient's urine specimen;
thus, Allen and Ellis directed EPC to use the UDSM shortcut to bill Medicare for
confirmation tests that it never conducted.[21] Moreover, the testing equipment EPC used
did not have the capability to run a confirmation test.[22] Likewise, the Government alleges
that Ellis and Allen directed EPC to use the UDSM shortcut to bill Medicare for
quantitative urine drug tests that it neither had the equipment to perform nor actually
conducted.[23]

The Complaint details examples of seven specific patients encounters where Allen
and/or Ellis directed an EPC employee to enter the UDSM shortcut into the billing software
to automatically populate the Medicare claim form with confirmation or quantitative tests
that were never conducted on each patient; EPC submitted those claim forms for each

---

[19] *Id*. at ¶¶ 94-96.
[20] *Id*. at ¶ 97.
[21] *Id*. at ¶ 98-101, 104.
[22] *Id*. at ¶ 102.
[23] *Id*. at ¶¶134-140.

patient, and Medicare reimbursed EPC.[24] The Complaint states the date of each patient's visit, the test on the patient's superbill that was actually conducted, the procedure codes and descriptions of the additional tests that were billed to Medicare but not actually conducted, the date the claim forms were submitted to Medicare, and the amount Medicare reimbursed EPC.[25]

The Complaint also details urine drug tests that Allen and Ellis directed EPC to bill, and Medicare subsequently paid, that the beneficiary's treating physician never ordered;[26] specific patient encounters in which Allen and Ellis directed EPC employees to use the UDSM shortcut to automatically bill Medicare for urine drug tests that had no clinical utility and were medically unnecessary, which Medicare paid;[27] and specific patient encounters where Ellis and Allen directed EPC employees to use the LCMSM shortcut to automatically bill Medicare for quantitative tests that were not medically necessary, which Medicare reimbursed.[28] Finally, the Complaint details specific ancillary tests performed on patients that Allen and Ellis instructed EPC's clinical providers to conduct on a pre-set schedule regardless of the patient's individual signs, symptoms, complaints, or medical history, which EPC billed to Medicare and Medicare reimbursed knowing such tests were

---

[24] *Id*. at ¶¶105-156.
[25] *Id*.
[26] *Id*. at ¶¶ 157-163.
[27] *Id*. at ¶¶ 164-211.
[28] *Id*. at ¶¶ 212-240.

not reimbursable, including Arterial Brachial Index tests, ANSAR tests, EKG tests, Sudoscan tests, Pharyngometer tests, Vestibular Autorotation tests, and bone density tests.[29]

## LEGAL STANDARD

On a motion to dismiss, the Court must accept as true all well-pleaded facts in a plaintiff's complaint.[30]   To avoid dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[31]   A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[32]   The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims.[33]

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleading is entitled to relief."[34] The purpose of this requirement is to "give the defendant fair notice of what the ... claim is

---

[29] *Id.* at ¶¶ 241-269.

[30] *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

[31] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[32] *Id.*

[33] *Twombly.*, 550 U.S. at 556.

[34] Fed. R. Civ. P. 8(a)(2).

and the grounds upon which it rests."[35]  "While a complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions."[36]  The complaint must contain enough factual allegations to "raise a right to

relief above the speculative level."[37]

## ANALYSIS

Defendant argues the Government fails to state a claim for relief under the FCA and

for payment by mistake and unjust enrichment under the common law. The Court discusses

each in turn below.

### A. False Claims Act

The Government brings the following FCA claims against Defendants: (1)

presentation of false claims under 31 U.S.C. §§ 3729(a)(1) and (a)(1)(A); (2) using false

statements to get false claims paid under 31 U.S.C. § 3729(a)(1)(B); (3) false record material

to obligation to pay under 31 U.S.C. § 3729(a)(1)(G); and (4) reverse false claims under 31

U.S.C. § 3729(a)(7). Defendants move to dismiss the presentation of false claims and using

false statements to get false claims paid under 31 U.S.C. §§ 3729(a)(1), (a)(1)A, and (a)(1)(B).

---

[35] *Twombly*, 550 U.S. at 554-55 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotation marks omitted) (alteration in original).

[36] *Id*. at 555 (citations omitted) (alteration in original).

[37] *Id*. at 555-56.

Under the False Claims Act, anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States is liable to the Government for a monetary penalty and treble damages.[38] To establish a cause of action under the FCA, the Government must prove three elements: "(1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false."[39] Defendants argue the Government's FCA causes of action fail to state a claim because: (1) the Complaint does not sufficiently allege that Defendants' claims for the drug tests were false; (2) the Complaint does not sufficiently allege Defendants acted with the requisite scienter; and (3) the Complaint does not sufficiently allege materiality.

The FCA does not deal with all non-compliance, and "[t]he fact that there may have been a violation of the laws governing Medicare . . . is not enough, standing alone, to sustain a cause of action under the False Claims Act."[40] Instead, there must be a falsehood that affects the government's willingness to pay, because "[i]mproper practices standing alone are insufficient."[41] To prevail, the Government must provide details of a link between improper practices and the submission of false claims.[42]

---

[38] 31 U.S.C. § 3729(a)(1).

[39] *United States v. R&F Properties of Lake County, Inc.*, 433 F.3d 1349, 1355 (11th Cir. 2005).

[40] *United States ex rel. Ortolano v. Amin Radiology*, Case No. 5:10-CV-583-OC-PRL, 2015 WL 403221 at *3 (M.D. Fla. Jan. 28, 2015) (citation omitted).

[41] *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1328 (11th Cir. 2009).

[42] *See United States ex rel. Klusmeier v. Bell Constructors, Inc.*, 469 Fed. Appx. 718, 721 (11th Cir. 2012).

10

In addition, the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to causes of action brought under the FCA.[43] Under Rule 9(b), "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[44] An FCA complaint must plead not only the "who, what, where, when, and how of improper practices," but also the "who, what, where, when, and how of fraudulent submissions to the government."[45] Rule 9(b) serves to ensure that a FCA claim has "some indicia of reliability . . . to support the allegation of an actual false claim  for payment being made to the Government."[46] Rule 9(b)'s standard, however, "should not be conflated with that used on a summary judgment motion."[47]

1. **Complaint Adequately Alleges Defendants' Claims were False**

Defendants first contend the United States fails to allege that the Medicare claims were false because (1) the allegations merely show a difference of medical opinion; (2) the Government fails to satisfy Rule 9(b)'s heightened pleading requirements regarding falsity; and (3) the Government relies only on agency guidelines rather than statutory and

---

[43] *Hopper v. Solvay Pharm., Inc.,* 588 F.3d 1318, 1324 (11th Cir. 2009).

[44] Fed. R. Civ. P. 9(b).

[45] *Corsello v. Lincare, Inc.,* 428 F.3d 1008, 1014 (11th Cir. 2005) (citation omitted).

[46] *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.,* 290 F.3d 1301, 1313 n. 24 (11th Cir. 2002).

[47] *United States ex rel. Rogers v. Azmat,* Case No. 5:07-CV-92 at 7 (S.D. Ga. May 17, 2011) (unpublished).

11

regulatory provisions to show falsity. The Court disagrees and finds the Complaint satisfies Rule 9(b)'s requirements and adequately alleges Defendants' claims were false.

"[T]he submission of a false claim is the '*sine qua non* of a False Claim Act violation.'"[48] The FCA requires "'proof of an objective falsehood' to show falsity."[49] "Medicare claims may be false if they claim reimbursement for services or costs that either are not reimbursable or were not rendered as claimed."[50] To satisfy Rule 9(b), the Complaint must set forth facts concerning the who, what, when, where, and how of the fraud.[51]

Here, the Complaint sufficiently alleges that Defendants submitted claims to Medicare for drug screening and ancillary tests that were not reimbursable or were not rendered and therefore were false.  The Complaint alleges that Defendants submitted claims and billed Medicare for drug screening tests that were either not given to patients at all or were performed but were not eligible for payment. Likewise, the Complaint alleges that Defendants billed Medicare for certain unnecessary ancillary tests that were performed on a pre-set schedule, regardless of the patient's individual symptoms. Moreover, the Complaint satisfies the Rule 9(b) standard because the allegations of the fraudulent billing includes references to specific  patients, specifics tests performed on specific dates, specific

---

[48] *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1328 (11th Cir. 2009) (quoting *United States ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1311 (11th Cir. 2002)).

[49] *U.S. ex rel. Parato v. Unadilla Health Care Ctr., Inc.*, 787 F. Supp. 2d 1329, 1339 (M.D. Ga. 2011).

[50] *U.S. v. R&F Properties of Lake County, Inc.*, 433 F.3d 1349, 1356 (11th Cir. 2005) (citing *United States v. Calhoon*, 97 F.3d 518, 524 (11th Cir. 1996), and *Peterson v. Weinberger*, 508 F.2d 45, 52 (5th Cir. 1975)).

[51] *See Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

procedure codes, specific dates on which Defendants submitted the claims to Medicare for payment, and specific amounts the Government paid to Defendants.

For example, the Complaint alleges that Defendants gave patient E.A. a drug screening test on January 25, 2012, but on January 26, 2012, Defendant submitted a claim to Medicare not only for the drug screening test but also for nine additional urine drug tests that were not conducted, many of which Defendant did not have the capability to run.[52] Medicare paid Defendant $192.33 for those nine additional tests. The Government identified 42 other specific patients for whom Defendants submitted alleged fraudulent claims, including the specific dates of service and improperly billed procedure codes associated with each patient.

Defendants' argument that the Government merely alleges a difference of medical opinion is unavailing. On the contrary, the Government alleges objective facts supporting its allegations that Defendants implemented a scheme for billing Medicare for tests they neither ordered nor rendered. The Complaint states that Medicare only pays for Part B services that are actually rendered and that are "reasonable and necessary for the diagnosis or treatment of illness or injury,"[53] and providers must certify that services are medically necessary.[54] A provider may only submit a claim for a diagnostic test to Medicare if it was

---

[52] Compl. ¶¶ 102, 141-46.

[53] Id. at ¶ 34 (citing 42 U.S.C. § 1395y(a)(1)(A)).

[54] Id. (citing 42 C.F.R. § 424.24(g)(1)).

ordered by the physician (or qualified non-physician practitioner) for the Medicare beneficiary to treat a specific problem, and the test was used by the provider to treat that problem.[55] The Complaint specifies that Defendants billed Medicare for tests that were not conducted, that Defendants did not have the equipment to run, and for the same lab and ancillary tests for all patients regardless of their individual symptoms and medical needs.

Likewise, Defendants' argument that the Government fails to identify any binding law or regulation that prohibits the conduct complained of and instead only identifies agency guidelines is unavailing. The Government relies on statutes and regulations, as well as agency guidelines, to adequately allege falsity in the Complaint. It is well established that Medicare claims may be false if providers claim reimbursement for services that "were not rendered as claimed."[56] Under 42 U.S.C. § 1395y(A)(1)(A), Medicare only covers those services that are "reasonable and necessary." Moreover, the Regulations provide that claims must be for testing and assessment of a specific problem suffered by the beneficiary for Medicare to reimburse the cost.[57] The Complaint alleges that Defendants submitted claims for drug testing and ancillary testing based on the use of shortcuts and pre-set schedules that are unreasonable and unnecessary. Additionally, Medicare claims may be false if they claim reimbursement for services that are not reimbursable and are therefore false.[58] The

---

[55] *See* 42 C.F.R. § 410.32.

[56] *U.S. ex rel. Walker v. R&F Properties of Lake County, Inc.*, 433 F.3d 1349, 1356 (11th Cir. 2005).

[57] 42 C.F.R. § 410.32.

[58] *See R&F Properties*, 433 F.3d at 1356.

Complaint alleges that Defendants submitted claims to Medicare for services that were not ordered or rendered and are therefore false.

Moreover, the Government appropriately relies on agency guidelines, such as the Federal Workplace Guidelines and Local Coverage Determinations, as evidence of whether certain tests were reasonable and necessary. Although evidence of a defendant's failure to comply with an administrative guideline does not necessarily establish that the defendant presented legally false claims to the United States, agency interpretations can be consulted to determine the meaning of the Medicare regulations and establish the falsity of the defendant's claims for Medicare reimbursement.[59] In sum, the Complaint sufficiently alleges facts to show Defendants submitted claims to Medicare that were false under the FCA.

### 2.   **Complaint Adequately Alleges Defendants Acted with Knowledge**

Defendants next contend the Government makes only conclusory allegations regarding knowledge. The FCA only creates liability for those who "knowingly present" false claims to the United States. The FCA defines the terms "knowing" and "knowingly" to mean that a person "has actual knowledge of the information," "acts in deliberate ignorance of the truth or falsity of the information," or "acts in reckless disregard of the truth or falsity of information."[60] The FCA does not require "proof of specific intent to

---

[59] *U.S. v. R&F Properties of Lake County, Inc.*, 433 F.3d 1349, 1358 (11th Cir. 2005) (citations omitted).
[60] 31 U.S.C. § 3729(b)(1)(A).

defraud."[61] Moreover, "[a]t the pleading stage, 'knowledge, and other conditions of a person's mind may be alleged generally.'"[62] Liability, however, does not attach "to innocent mistakes or simple negligence."[63]

"The False Claims Act does not create liability merely for a health care provider's disregard of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe."[64] Merely alleging a colorable claim that a statute or regulation relevant to Medicare has been violated is not sufficient. It is the submission and payment of a false Medicare claim, use of records known to be false, and false certification of compliance with the laws that create False Claims Act liability.[65] A reasonable but erroneous interpretation of a complex statutory or regulatory scheme should not, without facts demonstrating reckless disregard, create False Claims Act liability.

The Government sufficiently alleges facts showing Defendant knowingly submitted false claims to Medicare. The Complaint alleges that "[e]nrolled providers also have a duty to be knowledgeable of and comply with the statutes, regulations, and program instructions

---

[61] 31 US.C. § 3729(b)(1)(B).

[62] *U.S. ex. rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1224 (11th Cir. 2012).

[63] *Urquilla-Diaz*, 780 F.3d at 1058 (citation omitted).

[64] *Clausen*, 290 F.3d at 1311; *see also Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051-52 (11th Cir. 2015) (quoting *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005)).

[65] *See Mastej*, 591 Fed. Appx. at 706; *Hendow*, 461 F.3d at 1172 (holding that for a defendant to be "found liable under the False Claims Act," he must make "a palpably false statement, known to be a lie when it is made.").

and conditions regarding coverage for services for which they seek reimbursement."[66] The Complaint further alleges that Defendants knowingly generated false claims by setting up automatic billing shortcuts to bill for tests that were not performed. Such allegations sufficiently show Defendants acted with at least reckless indifference or deliberate ignorance to satisfy the FCA's knowledge requirement.

3. **Complaint Adequately Alleges Materiality**

"The materiality standard is demanding."[67] The FCA defines material as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."[68] The Supreme Court has taken this definition to be equivalent to the common law understanding.[69] In both the common law and FCA understandings of materiality, one "look[s] to the effect on the likely or actual behavior of the recipient of the allege misrepresentation."[70] "[I]f the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material."[71]

Defendants argue the Government paid Defendants' claims for years and thus the allegations only establish a violation of agency guidelines that are immaterial to the

---

[66] Compl. ¶ 36 (citing 42 C.F.R. § 424.516(a)).

[67] *Universal Health Servs., Inc. v. United States (Escobar)*, 136 S. Ct. 1989, 2003 (2016).

[68] 31 U.S.C. § 3729(b)(4).

[69] *Escobar*, 136 S. Ct. at 2002.

[70] *Id.*

[71] *Id.*

Government's decision to pay Defendants' claims. The Court is unpersuaded. As discussed above, the Government does not simply allege conduct that merely violated non-binding agency guidelines. The Complaint alleges that Medicare will only pay for services that are reasonable and necessary for the diagnosis or treatment of illness or injury[72] and that Medicare will not reimburse a provider for tests or services that are not ordered or used by a provider to treat a beneficiary's specific problem,[73] yet Defendants submitted claims in violation of both provisions, and had the Government known, it would not have reimbursed Defendants. The allegations in the Complaint do not show that the Government had actual knowledge that certain requirements were violated and yet paid them anyway. Thus, the Complaint alleges sufficient facts to satisfy materiality.

Accordingly, because Plaintiff's Complaint contains enough factual allegations that "raise a reasonable expectation that discovery will reveal evidence of" Plaintiff's FCA claims,[74] the Court finds Plaintiff has stated claims upon which relief can be granted.

## B. Payment by Mistake and Unjust Enrichment

Defendants argue the Government's claims for payment by mistake and unjust enrichment must be dismissed because (1) the Government fails to specify whether the

---

[72] Compl. at ¶ 34.

[73] *Id.* at ¶ 35.

[74] *Comer v. J.P. Morgan Chase Bank, N.A.*, No. 4:11-CV-88 (CDL), 2011 WL 5878400, at *1 (M.D. Ga. Nov. 23, 2011) (quoting *Twombly*, 550 U.S. at 555).

actions arise under federal common law or Georgia state law, and/or (2) it fails to state a claim. The Court is unconvinced.

First, Defendants fail to cite, and this Court has failed to find, any law requiring dismissal of common law claims for a plaintiff's failure to specify whether such claims arise under federal or state law. On the contrary, in cases where the plaintiff fails to specify whether the common law claim arises under federal or state law, courts in this Circuit have provided leave to amend to allow the plaintiff to cure the deficiency,[75] or applied the federal common law to the claims.[76] This Court will apply federal common law to assess  whether the Government sufficiently states claims for payment by mistake and unjust enrichment.

To state a claim for payment by mistake, the Government must show that "(1) payments were made; (2) under the belief that they were properly owed; (3) that belief being erroneously formed; and (4) the mistaken belief was material to the decision to pay."[77] To state a claim for unjust enrichment, the Government must show "(1) [it] had a reasonable expectation of [re]payment; (2) [the defendant] should reasonably have been expected to [re]pay; [and] (3) society's reasonable expectations of person and property would be defeated by nonpayment."[78] For the reasons stated above regarding the Government's

---

[75] *See U.S. ex rel. St. Joseph's Hosp., Inc. v. United Dist., Inc.*, 918 F. Supp. 2d 1306, 1316 (S.D. Ga. 2013)

[76] *See U.S. ex rel. Dildine v. Pandya*, 389 F. Supp. 3d 1214, 1222 (N.D. Ga. 2019); *United States v. Adams*, 371 F. Supp. 3d 1195, 1216 (2019).

[77] *United States ex rel. Dildine v. Pandya*, 389 F. Supp. 3d 1214, 1222-23 (N.D. Ga. 2019) (quoting *United States v. Adams*, 371 F. Supp. 3d 1195, 1216 (N.D. Ga. 2019)).

[78] *Id.*

19

sufficient allegations of falsity, knowledge, and materiality under the FCA, the alleged fraudulent circumstances under which Defendants allegedly received Medicare reimbursements adequately support the Government's claims for both payment by mistake and unjust enrichment.

## CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss [Doc. 6] is **DENIED**.

**SO ORDERED**, this 11th day of August, 2020.

<u>S/  C. Ashley Royal</u>
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT